**Electronically Filed
Intermediate Court of Appeals
28814
24-FEB-2011
07:44 AM**

NO. 28814

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


TERRI T. OKAMURA, Plaintiff-Appellant/Cross-Appellee,
v.
CALVIN WILLIAMS, aka CALVIN WILLIAMS, JR., aka CAL
WILLIAMS, aka M. MATSUNAGA; SAWAKO WILLIAMS; JAPAN
EXTERIOR TECHNOLOGIES, unregistered partnership dba JET,
Defendants-Appellees/Cross-Appellants,
and
JOHN DOES 1-20; JANE DOES 1-20; DOE PARTNERSHIPS 1-20;
DOE CORPORATIONS 1-20; DOE GOVERNMENTAL ENTITIES 1-20,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-0344)


MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

Plaintiff-Appellant/Cross-Appellee Terri T. Okamura (Okamura) appeals from the Judgment filed on September 26, 2007 in the Circuit Court of the First Circuit[1] (circuit court). The circuit court found in favor of Okamura on Count IV (unfair and deceptive practices) of Okamura's Complaint and against Defendant-Appellee/Cross-Appellant Calvin Williams (Calvin).[2]

---

[1] The Honorable Victoria S. Marks presided.

[2] Calvin was identified in the Complaint as Calvin Williams aka Calvin Williams, Jr., aka Cal Williams, aka M. Matsunaga. Calvin's legal name is Calvin Williams, Jr.

The circuit court dismissed Okamura's claims against Defendants-Appellees/Cross-Appellants Sawako Williams (Sawako) and Japan Exterior Technologies (JET) (Calvin, Sawako, and JET are collectively referred to as Defendants) and entered judgment in favor of Sawako and JET and against Okamura.

On appeal, Okamura contends the circuit court erred by concluding that

(1)  Hawaii Revised Statutes (HRS) §§ 444-22 (1993) and 487-13 (1993) do not allow a plaintiff to recover sums already paid to an unlicensed contractor;

(2)  Okamura was not entitled to restitution;

(3)  Okamura was not entitled treble damages under HRS § 480-13(a)(1) (Supp. 2004) or punitive damages;

(4)  Defendants did not commit fraudulent concealment; and

(5)  Sawako was not Calvin's partner in JET and there was no partnership by estoppel.

On cross-appeal, Defendants contend the circuit court erred by

(1)  awarding Okamura $20,000 in attorney's fees and $2,533.69 in costs from Calvin and finding that (a) Okamura was the "prevailing party" and (b) Okamura's claims were "inextricably intertwined," and

(2)  denying Defendants' August 10, 2007 Motion for Attorneys' Fees and Costs.

## I.  BACKGROUND

Calvin provided contracting services under JET's unregistered trade name.  JET imported outdoor gates, awnings, and ornamental fences from Japan.  Calvin was not a licensed contractor.

Calvin and Okamura's business relationship began in November 2003, when Calvin gave Okamura an estimate for an outdoor canopy.  On a JET form titled "Purchase/Work Order," Calvin wrote his name and phone numbers and the word "Sawako"

(his wife's name) in the space marked "selling agent." Okamura did not order the canopy, citing lack of money.

In January 2004, Okamura asked Calvin to give her an estimate for repair work, which she used in a construction defect lawsuit against the builder of her home. Okamura told Calvin that the estimate needed to be from a licensed contractor. Calvin told Okamura that he was not a licensed contractor, but he then provided a repair estimate on the letterhead of Pham & Associates, the business of licensed contractor David Pham. Calvin used the letterhead without Pham's knowledge or consent. Okamura did not have any of the work done.

In October 2004, Okamura and Calvin signed two contracts for estimated at $60,000. The circuit court found that at the time the contracts were signed, Okamura knew that Calvin was unlicensed, but she wanted to hire an unlicensed contractor because it was cheaper than a licensed contractor.

Over the next two months, Calvin and his crew, who were almost all unlicensed,[3] installed, inter alia, a driveway entrance gate and interphone system, a mail box, custom granite kitchen countertops, custom wood trim on windows and doors, new mirrored wardrobe doors, and flagstone pavers outside the house's entry doors. The workers built a closet extension onto the house by cutting into the side of the house, pouring a concrete foundation, and framing the closet.[4]

Between October and December 2004, Okamura paid Calvin a total of approximately $50,000 by five checks, including one naming Sawako as the payee. The checks were either deposited in a bank account jointly held by Sawako and her mother or cashed by Calvin. In late December 2004, Calvin refused to complete work on the house, and Okamura refused to pay the amount remaining under the contracts.

---

[3] A licensed electrician and plumber performed some of the work.

[4] On February 1, 2005, the City and County of Honolulu cited Okamura and Pham because the closet extension and alterations to the kitchen were done without a building permit.

On March 2, 2005, Okamura filed a complaint alleging intentional and/or negligent misrepresentation, fraudulent concealment, unfair or deceptive practices in violation of HRS Chapter 480, bad faith, breach of contract, negligence, and intentional infliction of emotional distress. Okamura prayed for restitution in the amount of $50,000; special, general, treble, and punitive damages; costs of suit; and pre-judgment interest.

At trial in January 2007, Okamura testified that the work done did not meet her specifications or was defective. She, however, called no expert to testify as to whether the work completed was defective.

Ruling partially in Okamura's favor, the circuit court entered the following conclusions of law:

> 10. Count III (Fraudulent Concealment). As to Count III, [Okamura] failed to prove that the defendant [sic] intentionally concealed material fact or that there was intent to defraud [Okamura].
>
> 11. Count IV (Unfair and Deceptive Practices). Here the defendant [sic] used the letterhead of a licensed contractor without knowledge or consent of the contractor. When doing so, the defendant [sic] knew that this was to be used in litigation between [Okamura] and CTC, and the Court concludes that this constitutes an unfair and deceptive act by defendant [sic], in violation of HRS §481A-3(a)(2) and (3); and §480-2 and §480-13. However, the Court does not conclude that the contract is void.
>
> 12. Here [Okamura] has requested restitution, and for JET to take out some, but not all, of the work it performed. This is not practical. For example, [Okamura] is not asking for the closet to be removed and restored, not asking for the stucco to be removed. Basically [Okamura] is asking the Court to require an unlicensed contractor without a building permit to perform work, and the Court will not countenance such an action.
>
> 13. Additionally, there is only one case that the Court could find where restitution was permitted, and that was under a very different statutory scheme, where it was specifically provided for in the statute.
>     . . . .
>
> 15. Count VI (Breach of Contract). [Okamura] failed to prove the amount of damages for any such breach. She is really claiming poor workmanship, but there was no expert to describe how the workmanship failed to meet up to standards.
>     . . . .
>
> 18. Count IX (Punitive Damages). [Okamura] did not prove by clear and convincing evidence a claim that could justify an award of punitive damages.

19. [Okamura] alleged that [Sawako] is liable as a partner with [Calvin]. In terms of the argument regarding partnership, [Sawako] never represented herself as a partner and she never participated in the business. The fact that she had a bank account where business funds were deposited is really insufficient to prove a partnership. Kienitz v. Peggy Rodgers, 40 Haw. 1 (1953); see also Cooper v. Spencer, 238 S.E. 2d 805 (1977) (Virginia case). There were other cases that I found persuasive that the defendants cited in their closing argument. And there is also no partnership by estoppel.

20. In summary [Okamura] has prevailed on the §480 claim and under §480-13 is awarded $1000 plus attorney's fees and costs as the prevailing party. [Okamura] has not prevailed on all the other counts.

Following trial, both parties requested attorneys' fees and costs, claiming they were entitled to them as the prevailing party. After hearing the arguments, the circuit court ruled:

[H]ere we had an unlicensed contractor using a licensed contractor's letterhead. You also had the unlicensed contractor failing to get a building permit, and so I think when you look at in essence the totality of the case, the 480 claim, while there were nominal damages, this was a failure of proof on [Okamura's] part. It was not that the unlicensed contractor did everything correctly, it was far from that, and so when I look at the entire case and when I look at how the claims were intertwined, I've done a rough apportionment. I've factored in, in my view, the arguments that the defense has made and in a sense looked at some offset for the defendant's [sic] claimed fees and costs, and this is I think a fair and appropriate bottom line in terms of factoring all of those different circumstances in, and so I'm denying the defendant's [sic] requests for fees and costs. I'll grant [Okamura's] in a reduced amount of $20,000 in fees and all the costs.

On September 11, 2007, the circuit court entered an "Order Granting in Part and Denying in Part [Okumura's] Motion for Attorney's Fees and Costs, Filed July 18, 2007" and an "Order Denying [Defendants'] Motion for Attorneys' Fees and Costs, Filed August 10, 2007."

The circuit court entered the Judgment on September 26, 2007 and found that Okamura had prevailed over Calvin on the unfair and deceptive practice claim and awarded her $1,000.00 in damages, $20,000.00 in attorney's fees, and $2,533.69 in costs from Calvin. The circuit court dismissed all of Okamura's claims against Sawako and JET, and entered judgment in favor of Sawako and JET and against Okamura.

## II.  STANDARDS OF REVIEW

### A.   Conclusions of Law (COLs)

> [The appellate] court reviews the trial court's COLs de novo.  A COL is not binding upon an appellate court and is freely reviewable for its correctness.  Moreover, a COL that is supported by the trial court's [findings of fact] and that reflects an application of the correct rule of law will not be overturned.

Bhakta v. County of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks, citations, and brackets in original omitted).

### B.   Attorney's Fees

> [The appellate] court reviews the denial and granting of attorney's fees under the abuse of discretion standard.  The same standard applies to [the appellate] court's review of the amount of a trial court's award of attorney's fees.  An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 431, 106 P.3d 339, 354 (2005) (internal quotation marks, citations, brackets in original, and ellipses omitted) (quoting Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000)).

## III.  DISCUSSION

### A.   HRS § 444-22 DOES NOT REQUIRE UNLICENSED CONTRACTORS, WHO HAVE BEEN PAID PRIOR TO COMPLETION OF THE JOB, TO DISGORGE PAYMENTS.

Okamura contends that a person who contracts with an unlicensed contractor is automatically entitled to recover from that contractor where there is a dispute over the contractor's work.

Okamura argues that HRS § 444-22 supports the conclusion that an unlicensed contractor cannot receive payment for work performed.  Section 444-22 provides:

> §444-22  Civil action.  The failure of any person to comply with any provision of this chapter shall prevent such person from recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof, in a civil action, if such

person failed to obtain a license under this chapter prior
to contracting for such work.

This court has held that § 444-22 "bars civil actions by unlicensed contractors." Jones v. Phillipson, 92 Hawai'i 117, 125, 987 P.2d 1015, 1023 (App. 1999). See also Shultz v. Lujan, 86 Hawai'i 137, 140, 948 P.2d 558, 561 (App. 1997) (footnote omitted) ("[I]f a person contracts to perform the work of a contractor but, at the time of contracting, the person is not licensed to do the work, then that person is prohibited from bringing civil action to recover payment for work done."). Section 444-22 does not provide that a party who uses an unlicensed contractor may recover payments already made.

### 2. Restitution requested by Okamura was an inappropriate remedy for breach of contract.

Okamura contends the circuit court erred in rejecting her request for "restitution." Okamura argued below that the circuit court should order Defendants to remove some of the fixtures that had been installed, restore part of the house to its pre-construction condition, and to return the money paid.[5]

Restitution is required when a person "has been unjustly enriched at the expense of another." Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 502, 100 P.3d 60, 72 (2004) (quoting Restatement of Restitution § 1 (1937)). As such, restitution is an equitable remedy. This court recognizes the principle that "equity has always acted only when legal remedies were inadequate." Porter v. Hu, 116 Hawai'i 42, 55, 169 P.3d 994, 1007 (App. 2007) (internal quotation marks and citation omitted). Therefore, to maintain a claim for restitution, Okamura needed to establish "the absence of an adequate remedy at law." Id. (internal quotation marks and citation omitted).

An adequate remedy in contract was available in this case because Okamura could bring suit for breach of contract,

---

[5] On appeal, Okamura values "restitution" at $76,000 plus repairs to the home, although it is unclear how Okamura arrived at that value because the facts in the record show she paid Defendants approximately $50,000.

notwithstanding the fact that the contract was made with an unlicensed contractor. See Jones, 92 Hawaiʻi at 126, 987 P.2d at 1024 (footnote omitted) ("HRS § 444-22 does not bar a member of the public, who is a party to such a contract, from bringing suit to recover breach of contract damages from an unlicensed contractor."). Okamura argues that Jones does not bar "the consumer from treating the contract as void and seeking restitution." To the contrary, Jones holds that "a contract with an unlicensed contractor is not void ab initio." 92 Hawaiʻi at 126, 987 P.2d at 1024 (some emphasis in original and some added).

Okamura also inappropriately relies on HRS § 480-12 (2008 Repl.), which concerns contracts made using unfair and deceptive practices. The circuit court did not find that Calvin had engaged in unfair and deceptive practices as to the contracts with Okamura. Accordingly, these contracts are not void under HRS § 480-12. Therefore, the circuit court did not err in refusing restitution.

Okamura contends the circuit court erred by finding that Defendants proved the value of the work done. This argument appears to be based on Okamura's belief that the circuit court permitted a "set-off" to Defendants by allowing Defendants to retain payments made by Okamura. However, Defendants retain Okamura's payments because the circuit court found that Okamura failed to meet her burden of proving damages. Even if Okamura proved that she was entitled to damages, Defendants would be entitled to set-off amounts paid for labor and materials against Okamura's recovery, regardless of any violations of HRS Chapters 444 or 480. See Hiraga v. Baldonado, 96 Hawaiʻi 365, 372, 31 P.3d 222, 229 (App. 2001). Therefore, Okamura's contention regarding the "set-off" is unavailing.

3. **The circuit court did not err in awarding nominal damages, but not punitive or treble damages.**

Okamura contends the circuit court erred in not awarding treble damages when it found that Calvin had violated

HRS Chapter 480. HRS § 480-13(b)(1) (Supp. 2004) provides in relevant part:

> §480-13  Suits by persons injured; amount of recovery, injunctions.
>
> . . . .
>
> (b)  Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
>
> (1)  May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys' fees together with the costs of suit[.]

Because Calvin was found to have violated Chapter 480 when he used Pham's letterhead, Okamura was entitled to at least $1,000 in damages.  As Okamura did not present proof of damages caused by Calvin, the circuit court awarded her the minimum damages allowed.  Okamura fails to show how the circuit court erred in doing so.

Okamura contends the circuit court erred in not awarding punitive damages.  Remedies in an unfair and deceptive trade practices claim, the sole claim on which Okamura prevailed, are governed by HRS § 480-13, which makes no provision for punitive damages.  Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 319, 47 P.3d 1222, 1232 (2002).  Therefore, Okamura was not entitled to punitive damages.

**4.  The circuit court's finding that there was no fraudulent concealment was not erroneous where the statute requires disclosure from licensed contractors.**

Okamura contends the circuit erred in denying her fraudulent concealment claim where Defendants did not provide "written disclosure" as required by HRS § 444-25.5 (Supp. 2010).[6]

---

[6]  HRS § 444-25.5 provides:

§ 444-25.5  Disclosure; contracts.  (a) Prior to entering into a contract with a homeowner involving home construction or improvements and prior to the application for a building permit,
(continued...)

Section 444-25.5 provides that it applies to "licensed contractors." Because Calvin, Sawako, and JET were not licensed, they do not fall within in the ambit of § 444-25.5. Therefore, Okamura's fraudulent concealment claim fails.

> **5.    The circuit court did not err in finding that Sawako was not a partner.**

Okamura contends the circuit court erred by concluding that Sawako was not a partner in JET.

HRS § 425-101 (2004 Repl.) defines a partnership as "an association of two or more persons to carry on as co-owners a

---

(...continued)
licensed contractors shall:

(1)    Explain verbally in detail to the homeowner all lien rights of all parties performing under the contract including the homeowner, the contractor, any subcontractor or any materialman supplying commodities or labor on the project;

(2)    Explain verbally in detail the homeowner's option to demand bonding on the project, how the bond would protect the homeowner and the approximate expense of the bond; and

(3)    Disclose all information pertaining to the contract and its performance and any other relevant information that the board may require by rule.

(b)    All licensed contractors performing home construction or improvements shall provide a written contract to the homeowner. The written contract shall:

(1)    Contain the information provided in subsection (a) and any other relevant information that the board may require by rule;

(2)    Contain notice of the contractor's right to resolve alleged construction defects prior to commencing any litigation in accordance with section 672E-11;

(3)    Be signed by the contractor and the homeowner; and

(4)    Be executed prior to the performance of any home construction or improvement.

(c)    For the purpose of this section, "homeowner" means the owner or lessee of residential real property, including owners or lessees of condominium or cooperative units.

(d)    Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480, as well as the provisions of this chapter.

business for profit." An "essential element" of a partnership is "an agreement to share profits." Winkelbach v. Honolulu Amusement Co., 20 Haw. 498, 503 (Haw. Terr. 1911); see also Buffandeau v. Shin, 60 Haw. 280, 281, 587 P.2d 1236, 1237 (1978). Such an agreement "may be express or implied, and may be proven by direct evidence, or by proof of facts and circumstances from which the agreement of the parties may be ascertained." Shinn v. Edwin Yee, Ltd., 57 Haw. 215, 218, 553 P.2d 733, 737 (1976). See also HRS § 425-103 (2004 Repl.). Whether a partnership exists is a question of fact for determination by the trier of fact, reviewed under the clearly erroneous standard. In re Tax Appeal of O.W. Ltd. P'ship, 4 Haw. App. 487, 494, 668 P.2d 56, 62 (1983).

Okamura relies on JET's billing practices as evidence of an implied agreement to share profits. Evidence presented at trial showed that payments by customers to JET were deposited into a bank account jointly held by Sawako and her mother; Sawako, upon Calvin's request, wired money to Sawako's father in Japan; and Sawako's father would use the money to purchase products for export to Hawaiʻi. Sawako testified that money for family expenses were also paid from the bank account she shares with her mother. Based on this evidence, we cannot conclude the circuit court erred in holding that "[t]he fact that [Sawako] had a bank account where business funds were deposited is really insufficient to prove a partnership."

Okamura also contends Sawako should be estopped from denying the existence of a partnership based on representations made to Okamura. HRS § 425-119 (2004 Repl.) allows the court to recognize a partnership where a person who "by word or conduct, purports to be a partner, or consents to being represented by another as a partner." Okamura relies on several representations as the bases for her estoppel claim: (1) Calvin's estimate set forth both his and Sawako's name and phone number, (2) Okamura's testimony that Calvin introduced Sawako as "my partner" at a dinner meeting with Okamura, and (3) the fact that Okamura wrote

11

a check to Sawako as partial payment on the contract. There was no evidence that Sawako herself purported to be a partner or gave her consent to be held out as Calvin's partner. Okamura does not dispute the circuit court's finding that Sawako herself never purported to be Calvin's business partner. Accordingly, the circuit court did not err in refusing to apply partnership by estoppel against Sawako.

**B.     CROSS-APPEAL.**

On cross-appeal, Defendants object to the award of attorney's fees to Okamura and denial of attorneys' fees to Sawako.

Generally, each party to litigation pays its own expenses except in instances where a statute, stipulation, or agreement provides that the prevailing party may shift the fees to his or her opponent. Taomae v. Lingle, 110 Hawaiʻi 327, 331, 132 P.3d 1238, 1242 (2006).

**1.     The circuit court did not abuse its discretion in awarding attorney's fees to Okamura.**

HRS § 480-13 provides the basis for shifting fees and costs to consumers who succeed on an action alleging unfair and deceptive practices. The circuit court found for Okamura on her HRS Chapter 480 claim and awarded her nominal damages and attorney's fees and costs as the prevailing party.

Defendants object to the amount awarded Okamura on the ground that the documentation submitted by Okamura's attorney showed "block billing," which did not allow the circuit court to apportion the fees between covered and uncovered claims. Alternatively, Defendants argue that the circuit court erred in finding that the Chapter 480 claim "intertwined" with the claims for which Okamura was not a prevailing party. In apportioning attorneys' fees between successful and unsuccessful claims, the trial court must determine whether the claims "involve[d] a common core of facts or [were] based on related legal theories." See Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408,

445, 32 P.3d 52, 89 (2001) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940 (1983)). The record shows that the circuit court determined the claims were intertwined, reviewed the billing submitted by Okamura's attorney, made a "rough apportionment" of fees, and ultimately reduced the attorneys' fees from the $54,000 requested to $20,000. Because the circuit court apportioned the fees between Okamura's successful and unsuccessful claims and reasonably explained its basis for the fee award, we do not conclude that the circuit court abused its discretion. <u>Cf.</u> <u>Price v. AIG Hawai‘i Ins. Co.</u>, 107 Hawai‘i 106, 113, 111 P.3d 1, 8 (2005) (remanding where lower court, where apportionment was required, did not explain its fee award); <u>Hensley</u>, 461 U.S. at 437, 103 S. Ct. at 1941.

**2. The circuit court abused its discretion in denying fees to Sawako.**

The circuit court found that Sawako was a prevailing party, but denied her any attorney's fees. This is irreconcilable with the provision in HRS § 607-14 (Supp. 2010), which requires that in assumpsit actions, the attorney's fees of the prevailing party be paid by the losing party. The action below was in the nature of assumpsit because Okamura's Complaint alleged breach of contract and requested contractual damages and quasi-contractual relief. <u>See</u> <u>Blair v. Ing</u>, 96 Hawai‘i 327, 332, 31 P.3d 184, 189 (2001). Therefore, attorney's fees should have been awarded to Sawako.

Given that Sawako and Calvin shared an attorney, Sawako's fees should, to the extent possible, be apportioned from the fees attributable to Calvin's defense. The circuit court should do this on remand.

**IV. CONCLUSION**

The "Order Denying Defendants Calvin Williams, Jr., Sawako Williams, and Japan Exterior Technologies' Motion for Attorneys' Fees and Costs, Filed August 10, 2007" filed on September 11, 2007 is vacated insofar as the order denies

13

attorney's fees and costs to Sawako from Okamura; the Judgment filed on September 26, 2007 in the Circuit Court of the First Circuit is vacated to the extent that the circuit court failed to award attorney's fees and costs in favor of Sawako and against Okamura; and this case is remanded to the circuit court to determine the amount of attorney's fees and costs to which Sawako Williams is entitled.  The Judgment is affirmed in all other respects.

DATED:  Honolulu, Hawaiʻi, February 24, 2011.

On the briefs:

Junsuke Otsuka
Matthew Grieder
David Squeri
(Otsuka & Buffington)
for Plaintiff-Appellant/
Cross-Appellee.

William S. Hunt
Peter Knapman
(Alston Hunt Floyd & Ing)
for Defendants-Appellees/
Cross-Appellants.

Presiding Judge

Associate Judge

Associate Judge

14